## Coleman v. Commonwealth.

(Decided October 3, 1924.)

### Appeal from Owen Circuit Court.

1. Criminal Law—Where Guilt Very Doubtful, Jury should be Permitted to Determine Issue of Fact, Uninfluenced by Incompetent and Irrelevant Evidence.—Where evidence was circumstantial and opposed by credible explanation of incriminating circumstances, supported by another's assumption of responsibility, it was important that no incompetent and irrelevant evidence calculated to prejudice minds of jury should be admitted.

2. Criminal Law—Correctness of Admission of Evidence Not Considered in Absence of Objection.—Correctness of admission of evidence that accused resisted extradition cannot be considered on appeal, where no objection was made on trial to its admission.

3. Criminal Law—Only such Acts, Subsequent to Offense, as Tend to Connect Defendant Therewith, are Admissible.—Only such acts of accused, subsequent to date of offense, as tend to connect him with offense, or from which his guilt or confession thereof might be reasonably inferred, are competent as evidence against him.

4. Criminal Law—Number of Trips of Sheriff to Force Return to State, Failure of Defendant to Interrupt or Correct Attorney, and His Facial Expression During Testimony Held Not Admissible.— Evidence of number of trips sheriff was compelled to make in order to force accused's return from another state for trial, and of accused's failure to interrupt or correct his attorney in extradition proceedings, and of his facial expression during certain testimony, was inadmissible.

5. Criminal Law—Admission of Evidence Concerning Extradition Proceedings Held Prejudicial.—Admission of incompetent evidence concerning extradition proceedings held prejudicial in view of closeness of issue.

JAS. H. SETTLE and FRANK C. GREENE for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE O'NEAL—Reversing.

Appellant was tried and convicted in the Owen circuit court of unlawfully possessing intoxicating liquor, and from the judgment thereon fining him $100.00 and sentencing him to thirty days in jail, he prosecutes this appeal.

It is insisted that his substantial rights were prejudiced by the admission of certain alleged incompetent evidence concerning the extradition proceedings under which he was returned to this jurisdiction for trial and by improper questions pertaining thereto propounded by the attorney for the Commonwealth.

Appellant did not own or control or have any interest in the premises where the witnesses found the intoxicating liquor, for the possession of which he was convicted. The evidence of his guilt of the offense charged, though ample to support the judgment, was wholly circumstantial and rested primarily on the fact that he was seen under more or less incriminating circumstances in and around the premises where the offense was committed. There was, however, no direct evidence of his guilt. Testifying in his own behalf appellant offered a very plausible explanation of his presence at the scene of the offense and of the other incriminating circumstances. He also introduced a witness who assumed full responsibility for the ownership of the liquor and emphatically denied that appellant owned any part of it or had any connection with it.

The jury was thus confronted by very persuasive but wholly cimcumstantial evidence of appellant's guilt on the one hand and by appellant's credible explanation supported by his full exoneration by the self-confessed offender on the other. It was, therefore, highly important to the appellant as well as to just and proper administration of the law that the jury should be permitted and required to determine the issue of fact thus squarely presented, uninfluenced by incompetent and irrelevant evidence calculated to prejudice their minds.

Appellant earnestly insists that the jury was unduly prejudiced against him by the introduction of such incompetent and irrelevant evidence. The evidence complained of and the court's rulings thereon are thus set out in narrative form in the record:

"The witness, Sam Dempsey, testified in substance to the following:

" 'I am a deputy sheriff and was on the 23 day of October, 1922, when some whiskey is said to have been found down at the Watt Brown stable. I handled a writ for Ben Coleman. I looked for him but he was not in this county and did not find him until I went to Cincinnati with requisition papers for him. I made five trips to Cincinnati before I was successful in bringing him back. I testified at the two proceedings in Cincinnati. Coleman brought me back in his car when he finally was required to come to Owenton.. He gave bond and returned. Harry Duvall went with me to Cincinnati as a witness to testify but the night before the case came up in the Cincinnati court I left Harry with Ben Coleman after he agreed to meet me at the court house the next morning. Harry, however, did not show up, nor was he present at the last October term of this court when the case was called for trial, although he had been subpoenaed a few days before court by me. He, Harry, was not present when this case was called this morning and it was necessary for a deputy to go for him and the Commonwealth refused to announce ready until Duvall was present in the court room. When arrested, Coleman was running a restaurant in Cincinnati, on Central avenue, a short distance from the Grand Central station.'

### DEMPSEY ON REBUTTAL.

" 'I was present at the hearing of the *habeas corpus* proceedings in Cincinnati when Ben Coleman sat mute and acquiesced in his attorney saying in substance that the Commonwealth of Kentucky would be unable to show that Ben Coleman was in Kentucky at the time alleged in the indictment because, in fact, Coleman was not in Kentucky at that time. I also saw him,. Ben Coleman, while Newt Osborne was testifying there, show surprise in his countenance and demeanor just as he did here before the jury when Osborne was testifying here today.' The defendant objected to any inquiry of the witness, Dempsey, as to the testimony on the extradition proceedings in Cincinnati; objection overruled, to which the defendant excepted."

Ben Coleman (the appellant)—cross-examination:

"By Mr. Howe: 'Did you not resist the effort to have you come back to Owenton to answer this indictment?' Witness answered, 'I would not come back until they got the papers right.' 'Did not your lawyer there at each trial, representing you and contending for you that you were not in Owen county on said date?' 'No.' 'Who was your attorney in that case?' .Ans. 'Arthur C. Fricke.' 'Was not he the attorney for George Remus, 'King of the Bootleggers?' Defendant objected to said question because of its incompetency and said objection .was sustained by the court. 'Did you not smile and grin and show surprise while Newt ,Osborne was testifying in said Cincinnati court?' Said question was objected to by defendant and all of said interrogations with reference to any trial in the Cincinnati court objected to by defendant and the same was overruled by the court, to which ruling the defendant excepted. Witness answered, 'No, sir.' 'Was not your countenance one of derision?' Objected to by defendant and said objection sustained. 'While Newt Osborne was testifying in Cincinnati did you not throw your eyes open and grin and show surprise just as you did here a while ago when Osborne testified?' Defendant's objection overruled."

Other evidence of similar purport was introduced over appellant's objection, but there was no objection to

proof of the fact that appellant resisted extradition, hence. the correctness of the admission of that fact is not now before us. Appellant did object to evidence as to various incidents alleged to have occurred during and in connection with the extradition proceedings. It is probably true that no one of the objectionable statements when separated from the others would greatly affect or materially prejudice the jury, but when weighed as a whole, the conclusion is inescapable that they necessarily influenced the jury against appellant. We think it equally clear that they were incompetent. It would unduly lengthen this opinion to enter into a discussion of our reasons for so holding as to each particular statement. Suffice it to say that only such acts of the appellant subsequent to the date of the offense as tended to connect him with the offense or from which his guilt, or a confession thereof, might reasonably be inferred were competent as evidence against him. Surely it cannot be contended that the number of trips the sheriff was compelled to make in order to force appellant's return for trial or appellant's facial expression and the forced similarity thereof, during the extradition proceedings and the course of his trial, or his failure to interrupt or correct his attorney in open court, or other such evidence falls within the foregoing general principle just stated.

Believing that under the circumstances disclosed by the record appellant's substantial rights were materially prejudiced by the introduction of this incompetent evidence, we feel constrained to award him a new trial..

Wherefore, the judgment is reversed.